FILED
Jan 26, 2021
02:26 PM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT COOKEVILLE

| | | |
|---|---|---|
| AMANDA MOSLEY, | ) | Docket No 2019-04-0064 |
| Employee, | ) | |
| v. | ) | |
| HG STAFFING, LLC, | ) | State File No. 7907-2019 |
| Employer, | ) | |
| And | ) | |
| CAROLINA CAS. INS. CO., | ) | Judge Robert Durham |
| Carrier. | ) | |

## EXPEDITED HEARING ORDER
## GRANTING BENEFITS IN PART AND DENYING IN PART

This case came before the Court on January 15, 2021, for an Expedited Hearing. Ms. Mosley seeks additional medical and temporary disability benefits for right wrist and hand complaints she alleges were due to her employment with HG Staffing. The Court holds that Ms. Mosley is not likely to prevail at a hearing regarding medical treatment with Dr. Terry. However, she is likely to prove entitlement to past temporary partial disability benefits from April 8 through June 20, 2019.

### History of Claim

HG Staffing, an employment agency, hired Ms. Mosley in September 2018 to work at Dana Corporation. The parties stipulated that she sustained a work-related injury to her right hand and wrist on January 10, 2019, and she told her supervisor at Dana of her injury. Ms. Mosley testified that the supervisor modified her duties but advised her against giving formal notice of an injury because she could lose her job. Ms. Mosley believed she had been "doing great" at Dana and was on the verge of being offered a full-time position. Thus, she attempted to treat on her own at first.

However, Ms. Mosley's symptoms persisted, and a safety coordinator at Dana insisted she file an accident report, which she did on January 25. Dana then terminated her employment on January 28 due to "performance." Dana Givens, Chief Operating

1

Officer of HG Staffing, did not provide any evidence regarding Ms. Mosley's alleged performance deficiency, and she agreed that Dana had not complained of Ms. Mosley's attendance or production before the termination. However, she testified that Dana would not do so, since it did its own evaluations after ninety days. She asserted that Ms. Mosley's evaluation was delayed somewhat due to the holidays.

Ms. Givens also testified that, once an employee's contract is terminated, she is taken off HG Staffing's records unless she reapplies for a new appointment, so Ms. Mosley's last day of employment was January 25. Ms. Mosley testified that, after her termination, she called HG Staffing about a new assignment but was told nothing was available. Ms. Givens testified she had no knowledge of Ms. Mosley requesting another assignment and stated that HG Staffing had jobs to accommodate any restrictions if Ms. Mosley had remained employed.

As for her treatment, HG Staffing initially authorized a visit with Dr. Grayson Smith. He diagnosed wrist pain but did not treat her. After Ms. Mosley filed a Petition for Benefit Determination, HG Staffing agreed to authorize care with orthopedist Dr. James Rubright.

Ms. Mosley first saw Dr. Rubright in April and complained of right wrist and thumb pain that she attributed to her work at Dana. Dr. Rubright noted "classic findings" of de Quervain's tenosynovitis with some thumb joint arthritis and stated that Ms. Mosley's condition was "classic tendinitis related to overuse." He gave her a steroid injection and a splint and restricted her from working with her right hand for six weeks.

When Ms. Mosley returned in June, Dr. Rubright noted that her pain had migrated to the MCP thumb joint, and her de Quervain's symptoms were essentially gone. He released her to full duty with no impairment or restrictions.

After her release, Ms. Mosley attempted to work at a nursing home for a few weeks but was unable to do so due to worsening pain and weakness around the right thumb joint. She returned to Dr. Rubright in September, and he diagnosed recurrent de Quervain's syndrome and possible early CMC joint arthritis. However, he was concerned as to whether she had filed a new workers' compensation claim, since "technically" her old claim had been closed. He went on to say that he did not know if he could "clearly assign causation to her previous work," given that her symptoms had "essentially resolved" until she worked for another employer. He said he needed "clarification" from HG Staffing's carrier about approval for additional treatment, since Ms. Mosley did not "technically" have an "open claim" any longer.

HG Staffing denied additional care, so Ms. Mosley sought unauthorized treatment in November with orthopedist Roy Terry. He ordered an MRI that revealed CMC osteoarthritis and referred her to Dr. Son Le to evaluate for nerve damage.

2

Dr. Le saw Ms. Mosley in March 2020. His notes are the first to record Ms. Mosley's account that she injured her hand when she attempted to catch a falling drive shaft. Dr. Le noted she complained of right upper-extremity numbness and pain around the base of her right thumb that extended to her wrist and worsened with activity. On exam, Dr. Le observed bilateral Reynaud's phenomenon. He performed a stellate ganglion nerve block that improved her symptoms.

Ms. Mosley returned to Dr. Terry, and he noted that she had always given a consistent history, and he had no reason to doubt her. He then completed a "check-the-box" note, which asked whether he agreed "that Amanda Mosley's injury is more likely than not to a reasonable Degree of medical certainty an injury that occurred on the job while working for the company HG Staffing and the reason she had to seek medical attention." He checked "yes."

Dr. Terry saw Ms. Mosley again in October. After noting Dr. Rubright's reservations about causation, he said that he believed that the problems she initially treated under workers' compensation are "probably the same problems she is having now," which are "more likely than not related to her work-related condition."

HG Staffing then wrote to Dr. Rubright with a "check-the-box" causation letter. He checked "no" when asked whether he was "able to state to a reasonable degree of medical certainty (more than 50%) that Ms. Mosley's current symptomology is related to her employment at HG Staffing when considering all causes."

HG Staffing also obtained an independent medical evaluation (IME) with orthopedist David West. He recorded that Ms. Mosley worked for HG Staffing in a job that required "repetitive abduction and extension of the thumb." He noted a history of rheumatoid arthritis and chronic pain. He said that he believed Ms. Mosley likely suffered a "de Quervain's-type syndrome" that was "most likely a direct injury from her repetitive use" at HG Staffing. He could not explain her current pain; however, he felt that her symptoms were multifactorial, and her condition was "certainly" not greater than 50% caused by her work injury at HG Staffing. He concluded by stating that, while treatment might be necessary, the need was not "directly related" to her 2019 injury, particularly since she was released and "doing fine."

**Findings of Fact and Conclusions of Law**

Ms. Mosley must present evidence from which this Court can determine that she is likely to prove at trial that her current right-hand and wrist symptoms arose primarily out of and in the course and scope of her employment as well as her entitlement to medical and temporary disability benefits. *See McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015).

3

To prove causation, she must show to a reasonable degree of medical certainty that her January 10 work accident contributed more than fifty percent in causing her current symptoms, considering all causes. Reasonable degree of medical certainty means "it is more likely than not considering all causes, as opposed to speculation or uncertainty." *See* Tenn. Code Ann. § 50-6-102(14) (2020). Given that the standard requires "medical certainty," causation must be shown through expert medical opinion. *Id*. The parties stipulated, and the doctors agreed, that Ms. Mosley suffered a work injury to her right hand and wrist while working for HG Staffing. They disputed whether this injury is the source of Ms. Mosley's current symptoms.

The Court first notes that it found Ms. Mosley to be a candid, credible witness who provided balanced testimony without exaggeration or hyperbole. Like Dr. Terry, the Court has no reason to doubt her truthfulness.

Nevertheless, facts that the Court would find useful in assessing causation are missing from the evidence. Ms. Mosley did not testify as to whether she suffered similar symptoms before her employment. While the parties stipulated to a January 10 work injury, Ms. Mosley did not describe the injury itself, and the medical records are divided as to whether she reported repetitive trauma or a specific incident involving her attempt to catch a driveshaft. Also, Ms. Mosley did not testify as to the nature of her employment with the nursing home, or to the accuracy of Dr. Rubright's statement that her symptoms had resolved before working there.

Regarding the medical proof, Dr. Rubright's opinion on causation is entitled to a presumption of correctness, since he was the authorized physician. Tenn. Code Ann. § 50-6-102(14)(E). However, the Court finds his opinion unsatisfactory. His September record was very qualified as to causation and was mostly concerned with whether HG Staffing would pay for benefits under the closed "old claim." The "check-the-box" causation letter he signed merely confirms that he cannot give an opinion that the symptoms are causally related to the work injury—it is not an affirmative causation denial.

In addition, both Dr. Rubright and Dr. West believe that Ms. Mosley's de Quervain's symptoms had resolved and then returned after she attempted to return to work for a few weeks immediately after her release from care to be significant in determining causation. However, neither doctor explained to the Court's satisfaction these conclusory opinions.

Dr. Terry's causation opinion is also problematic. The records are unclear as to how much Dr. Terry knew of Ms. Mosley's employment with the nursing home, which Dr. Rubright and Dr. West considered so significant. More important, he never explicitly stated that Ms. Mosley's current symptoms and need for treatment primarily arise out of

4

her work injury with HG Staffing. That opinion could perhaps be gleaned from combining his records with the "check-the-box" letter, but it is far from clear. Dr. Terry's opinion does not have to use specific language from Tennessee Code Annotated section 50-6-102(14) for the Court to find causation, but the proof must be sufficient to meet the standard. *See Thysavathdy v. Bridgestone Ams. Tire Operations,* No. M2017-01575-SC-R3-WC, 2018 TN LEXIS 313, at *26 (Tenn. Workers' Comp. Panel June 8, 2018). After careful consideration, the Court holds the evidence does not do so.

Although the Court finds problems with the evidence that both parties relied on regarding causation, the burden lies with Ms. Mosley to show she is likely to prevail at trial in proving that her current symptoms are causally related to her injury at HG Staffing. Given the current record, the Court finds that Ms. Mosley's proof is insufficient and denies her request regarding medical expenses and further care with Dr. Terry.

The Court next considers temporary partial disability benefits. Ms. Mosley must prove: (1) a partial disability from working as the result of a compensable injury; (2) a causal connection between the injury and the inability to work; and (3) the duration of the period of disability. *See Shepherd v. Haren Const. Co., Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 15, at *13 (Mar. 30, 2016). She must also show the difference between what she could have earned in her partially-disabled state and her average weekly wage. Tenn. Code Ann. § 50-6-207(2)(A).

Applying these standards, Dr. Rubright restricted Ms. Mosley from using her right hand on April 8, 2019. This restriction continued until June 20, 2019. During that time, HG Staffing did not offer her employment within her restrictions. Further, the Court holds that HG Staffing provided insufficient evidence to show that Ms. Mosley was terminated for cause. Although Dana claimed it terminated her contract for "production," HG Staffing did not present any evidence of a lack of production. Ms. Givens admitted that Dana did not object to Ms. Mosley's attendance or production before her termination. Ms. Mosley testified that she was "doing great" and anticipated an imminent offer to join Dana full-time. Further, her supervisor warned her that if she reported an injury, she would be terminated, which in fact happened the day after she made a formal report.

Therefore, the Court holds that HG Staffing produced insufficient evidence that it terminated Ms. Mosley for cause, and it did not offer her employment within her restrictions. Therefore, she was unable to earn any income in her disabled state. The Court holds that Ms. Mosley is likely to prove entitlement to temporary partial disability benefits, at her full compensation rate of $293.62, from April 8 through June 20, 2019, in the amount of $3,062.03. However, Ms. Mosley did not provide evidence of any further medical restrictions against employment, so she is not entitled to additional temporary partial disability benefits at this time.

IT IS, THEREFORE, ORDERED THAT:

1. Ms. Mosley's requests for payment of past medical expenses and that HG Staffing authorize care with Dr. Terry are denied.

2. HG Staffing shall pay Ms. Mosley temporary partial disability benefits at a compensation rate of $293.62 from April 8 through June 20, 2019, in the amount of $3,062.03.

3. This case is set for a Scheduling Hearing on **Thursday, March 4, 2021, at 10:30 a.m. Central Time**. The parties must call 615-253-0010 to participate. Failure to appear might result in a determination of the issues without the party's participation.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance might result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED on January 26, 2021.**

_____
**ROBERT DURHAM, JUDGE**
**Court of Workers' Compensation Claims**

**APPENDIX**

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Order of Continuance

6

4. Order Compelling Discovery
5. HG Staffing's Exhibit List
6. HG Staffing's Witness List
7. HG Staffing's Expedited Hearing Brief

Exhibits:
1. Wage Statement
2. Dispute Resolution Statement
3. Choice of Physician Form
4. First Report of Injury
5. Affidavit of Denise Givens
6. HG Staffing's Submitted Medical Records
7. Ms. Mosley's Submitted Medical Records
8. Dr. Terry's record dated June 18, 2020
9. Dr. Terry's record dated October 8, 2020

**CERTIFICATE OF SERVICE**

I certify that a copy of the Order was sent as indicated on January 26, 2021.

| Name | Certified Mail | Via Email | Email Address |
|------|------|------|------|
| **Amanda Mosley** | X | X | 217 Hillcrest Drive<br>Carthage, TN 37030<br>Ajmosl78@gmail.com |
| **Rosalia Fiorello** | | X | rfiorello@wimberlylawson.com |

_____
**PENNY SHRUM, Court Clerk**
WC.CourtClerk@tn.gov

7



Expedited Hearing Order Right to Appeal:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties
**Appellant(s)** (Requesting Party):_____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*